PENDLETON, President,
delivered the resolution of the judges, as follows:
The court are, at present, of opinion, that although the demands might have been originally well founded against the commonwealth, yet if the claimants neglected to exhibit their claims to a county court, under the act of 1781, or the subsequent acts continuing that mode until September 1787, their claims were barred by that act, unless they can shew that they made such application to a court, or were diverted from doing so, by some proceeding between them and the executive, or the auditor.
In Cunningham’s case, there was an application, and such valuation recently made, *748 but adjudged by this court not to be binding to fix the value, because at the time, the law, meant to be pursued, was expired; and against this mistake the court relieved him, since he meant to use the legal diligence in due time. We think, at present, that case went far enough, and ought not to be extended to let in all stale claims for impressments, in which no step was taken to establish *them, if existing, by adjustment of a county court, during the period from 1781 to September 1787.
In the present cases, no application is proved, or even stated, nor any excuse assigned for its omission, and the legal objection applies, without any equity to encounter it.
But as the claimants may be able to shew a court’s valuation of their claims, such as Cunningham’s, or a reasonable excuse for not shewing it, and may have forborne to exhibit them, from a mistaken impression of the principles of decision in Cunningham’s case, the court are willing for the sake of justice in these cases, not confined to pleadings as in ordinary cases, to afford them an opportunity of producing them.
As delays may be injurious to the claimants or the commonwealth, upon whomsoever of them the loss shall fall, in an application to the United States, the real debtors, if the papers are now ready, the court are willing to receive and judge of them; otherwise the cause must be continued to have the defect supplied.
I said for the sake of justice, the court not allowing the similitude to be just, between the introduction of such papers here, and that of recurring to subsequent laws.
The petitioners not having any additional evidence ready, the causes were continued; and, at the next term, they filed affidavits upon the subject.
Banks proved by a witness; that Hunter, Banks & Co., about the year 1783 or 1784, applied to the auditor for payment, but was refused: and that about the same time he applied to the executive, who thought there was no redress: and upon his requesting them in 1787 to lay the claim before the assembly, they refused.
North & Co. proved by several witnesses, that they had, in the year 1784, and at sundry times afterwards, applied to the auditor for payment, but could not obtain it.
The foregoing testimony was now insisted on by the counsel for the petitioners, as establishing their right to payment under the opinion of the court at the last term.
*PENDUETON, President,
delivered the resolution of the judges. That the additional evidence did not supply the defects contemplated by the former opinion of the court. That the meaning of the court was, that the claimants should shew that they were diverted from an earlier and proper pursuit, by hopes of payment given them by the executive or the auditor. But so far from that being shewn, the additional evidence proved that both of them had refused it: which left the petitioners at liberty to have pursued the legal' steps, if they had thought proper; and that the failure to do so proceeded from themselves. That, therefore, the judgments were to be reversed; and that the following was to be the entry:
“This day came as well the attorney general for the commonwealth, as the ap-pellees by their counsel, and the court having maturely considered the transcripts of the records of the judgments aforesaid, the affidavits produced by the appellees pursuant to a former direction of the court, and read by consent of the attorney general, and the arguments of counsel, is of opinion, that the expedition stated in the proceedings to have been meditated against the British army in the town of Portsmouth, being planned by, and to be executed under the command of baron de Steuben, an officer of the continental army, who required the aid of the government of this state, in procuring the auxiliary assistance of the vessels lost; the claim» of the appellees were justly due from the United States, especially as the faith of the Union was pledged by their officer, to make compensation : Nevertheless, since the faith of this state was also pledged by government, for their recompence, they had originally a claim against the state, which, if paid would have been a proper article of debit to the United States, in the accounts between them and this state. That the valuations of ‘ these vessels and cargoes, being made and returned to the state executive, the subject is presumed to have been laid before the general assembly, (the power who alone could provide funds for, and authorize payment,) in their November session *1781, when an act passed intituled, ‘an act for adjusting claims for property impressed or taken for public service,’ wherein reciting that, on examination of several returns of valuations of property impressed, the prices appear to be unreasonable, the several county courts are authorized to value horses, provisions and all other necessaries impressed or taken for public service, independent of former valuations, and to certify their proceedings to the succeeding assembly, that justice might be done to individuals. By an act passed in May 1782, the auditor was directed to regulate the county court certificates by a scale of prices fixed in the law for certain articles, and issue warrants accordingly, as to all other articles he was to issue warrants according to the certificates, unless he judged that there was reason to reduce the prices, which he was empowered to do. By an act passed in October 1782, reciting that there might be several claims for property impressed or taken, which had not been adjusted and allowed by the county courts, the courts are required to receive and adjust all such as should be presented before June the first, then next, and certify and return the same and the vouchers, to the next assembly. By an act passed in May 1783, the courts were empowered to receive claims till the 1st of October following, which were to be certified to two commissioners appointed in aid of the auditor, who were to issue the warrants instead of him; but, by a subsequent act in October, the commissioners were discontinued, and the returns were to be made to the auditor. By that act of October 1783, and by several *749 subsequent acts of October- 1784, October 1785 and. October 1786, the power of the courts to receive these claims and certify the valuations, was kept open until September the first, 1787, (except some small intervening chasms, from mistake in wording the laws, unimportant in the present dispute,) and then the power was finally closed, and by an act of the general congress, passed August the tenth, 1790, no claim was to be admitted in the account of any state against the United States, as paid to a citizen, unless *the same was allowed by such state, before the twenty-fourth of September, 1788. Since, therefore, during the period from October 1781 to September 1787, these claimants do not appear to have applied to any court for a valuation of their property, to entitle themselves to an allowance by the auditor, who had no power to issue his warrant, but on a certificate of such valuation, his refusal of the warrant upon the present application, would have been justifiable on that ground only; and since, by allowing the claims at this late period, a loss might be thrown upon the state, through the negligence of the claimants, the court is of opinion, that the claims against the state are barred both in law and equity. In the case relied on, of Cunningham & Co., they applied to a court in time, and obtained a valuation, with which they regularly applied to the auditor, who refused a warrant, being of opinion that the impressment was not of the sort contemplated by the act of 1781. After the time had elapsed, an application was made to the legislature, who referred them to the judiciary. Upon the auditor’s refusal, an appeal was made to the district court, and from thence to this court, where it was decided, that the case was embraced by the act of 1781, in which the auditor was mistaken, and ought to have issued a warrant upon the valuation: He would have been decreed to do so by this court, but it happened that it was made in one of those chasms of time when none of the laws were in force, and therefore, not legally binding, to entitle him to the claim, or fix the value. But it being apparent that the legislature, as well as others, believed the laws to be in force at the time, and the claimant, on that supposition, had made a recent pursuit, the court relieved him against the mistake, and the value was to be settled by a jury. In the present case, the supplemental depositions admitted by consent, do not prove the claim to have been presented to any court for valuation. They tend to shew, that the claimants en-quired of the auditor, if the original ap-praisement was in his office? He answers, it is not: They proceed to ask his advice, which, if he gave at*all, was not official, but the same as if given by any other individual, and no excuse for their not pursuing the law. The cases, therefore, are wholly dissimilar as to the ground of relief. Upon the whole, the court adjudge that there is error in the judgments aforesaid: Therefore it is considered, that the same be reversed and annulled, and that the appellees respectively pay the costs of the prosecution of the appeals aforesaid here; and this court proceeding to give such judgment as the said district court ought to have given, It is further considered that the several appeals of the appellees from the decisions of the auditor of public accounts rejecting the claims of the appellees be dismissed.”